## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

JODY STEWART,                              )
                                           )
        **Plaintiff,**              )
                                           )
v.                                         )    **Case No. 10-CV-0511-CVE-FHM**
                                           )
SULZER ORTHOPEDICS, INC.;                  )
CENTERPULSE ORTHOPEDICS, INC.;             )
ZIMMER, INC; and                           )
ZIMMER HOLDINGS, INC.,                     )
                                           )
        **Defendants.**             )

## OPINION AND ORDER

Now before the Court is Zimmer's Motion for Summary Judgment (Dkt. # 30).  Defendants

Zimmer, Inc. and Zimmer Holdings, Inc.[1] seek summary judgment on all of plaintiff's claims.

Defendants argue that plaintiff's claims are barred by the statute of limitations.  Even if plaintiff had

timely filed her claims, defendants argue that plaintiff has produced no evidence in support of her

claims and summary judgment is appropriate.  Dkt. # 30, at 2.  Plaintiff, proceeding pro se, responds

that she has evidence to support her claims, but she not attached this evidence to her response to

defendant's summary judgment motion.  Dkt. # 48, at 3.

### I.

Plaintiff was involved in an automobile accident in 1998 and suffered significant personal

injuries.  Dkt. # 30-5, at 4-5.  Plaintiff fractured her hip and had pelvic fixation surgery shortly after

---

[1]    Zimmer, Inc. states that Sulzer Orthopedics, Inc. and Centerpulse Orthopedics, Inc. are now
known as Zimmer, Inc., and Zimmer, Inc. and Zimmer Holdings, Inc. are the only proper
parties.  Dkt. # 2, at 2; Dkt. # 30, at 1.  Plaintiff does not contest Zimmer, Inc.'s statement.
Thus, the motion for summary judgment is filed on behalf of all remaining defendants.

the accident. Dkt. # 30-3, at 20. Plaintiff's orthopedic surgeon, Rodney Plaster, M.D., diagnosed

plaintiff with post traumatic degenerative joint disease of the right hip, and plaintiff subsequently

had a total hip arthroplasty to replace her right hip joint in July 2000. Id. During the surgery, Dr.

Plaster found that plaintiff's hip was covered with scar tissue from a prior hip surgery and the

articular surface of the femoral head was eroded down to bare bone. Id. at 20-21. Dr. Plaster

removed any hardware from prior hip surgeries and replaced plaintiff's right hip with an artificial

hip. Id. at 21.

Plaintiff was moved to a rehabilitation facility following this surgery and injured her hip

when she collided with a door. The resulting wound became infected and additional surgery was

required to properly close the wound. Id. Plaintiff reported chronic hip pain after her July 2000 hip

replacement surgery, and she visited Dr. Plaster in 2002. Dr. Plaster determined that plaintiff's

initial hip replacement surgery was not successful, and he performed a second hip replacement

surgery on October 2, 2002. The artificial hip used for the second hip replacement was not

originally designed by defendants, but defendants subsequently acquired the company that designed

the subject artificial hip.[2] Id. at 22. Plaintiff's medical records show that the Device was in good

position about 6 weeks after the second hip replacement surgery. Id.

Plaintiff complained of "chronical pain" in her right hip and returned to Dr. Plaster for

follow-up treatment. Dkt. # 30-5, at 6. According to plaintiff, Dr. Plaster informed her that the

Device was stable and any pain plaintiff was feeling was the result of bone degeneration, rather than

---

[2]     The subject artificial hip consists of seven individual pieces, and defendants and their experts
        refer to the artificial hip as "the Device." See Dkt. # 30-3, at 2-3. For consistency with the
        pleadings, the Court will also refer to the artificial hip as "the Device" throughout this
        Opinion and Order.

a defect in the Device. Id. at 6-7. Plaintiff's deposition testimony establishes that she has visited Dr. Plaster many times repeating her complaints of hip pain and renewing her complaints about the Device, and it appears that her relationship with Dr. Plaster has deteriorated as a result of this disagreement as to the cause of plaintiff's continuing pain. Id. at 13. Plaintiff testified in her deposition that she knew the Device was defective shortly after the October 2002 hip replacement surgery, because she had the same pain as she did after the first hip replacement surgery. Id. at 11. At the latest, she claims that she knew there was something wrong with the Device within a year of the October 2002 surgery. Id. at 12. Plaintiff's medical records from 2006 show that the Device is not loose and is in its proper position, but plaintiff continues to complain of pain in her right leg and groin and drainage from her right leg. Dkt. # 30-3, at 22.

On July 19, 2010, plaintiff filed this case in the District Court of Mayes County, Oklahomam alleging claims of manufacturer's products liability, negligence, and breach of warranty against defendants. Dkt. # 2-2, at 1-3. Plaintiff was not represented by an attorney. Defendants removed the case to this Court on the basis of diversity jurisdiction, and the Court entered a scheduling order (Dkt. # 18) setting, inter alia, a discovery cutoff of March 17, 2011. The Court also set plaintiff's deadline to identify expert witnesses and exchange expert reports as February 3, 2011, and defendant's deadline to provide expert disclosures as February 17, 2011. Plaintiff did not request any discovery from defendants and did not identify any expert witnesses. Defendants sent interrogatories and requests for production to plaintiff, and plaintiff failed to respond. Defendants filed a motion to compel and the magistrate judge set the motion for hearing, but plaintiff failed to respond to defendants' motion or appear at the hearing. Dkt. # 27. The magistrate judge granted defendants' motion to compel, but plaintiff did not respond to defendants' discovery requests.

Defendants also obtained the services of two expert witnesses and provided copies of their reports to plaintiff. Defendants retained Steven M. Kurtz, Ph.D., to offer an expert opinion as to whether the Device failed or was defectively designed. Dkt. # 30-4, at 55. Dr. Kurtz stated four opinions in his expert report:

1.      There is no evidence of [sic] that there has been a failure of the subject hip components, nor is there evidence that a failure has occurred due to defects in design, manufacturing, or warning.

2.      The materials used in the hip system and sterilization procedures were state-of-the-art for the orthopaedic industry.

3.      The devices used for Mrs. Stewart's right hip were inspected using state-of-the-art methods for the orthopaedic industry.

4.      The total hip that was implanted in Mrs. Stewart's right hip was neither defective nor unreasonably dangerous.

Id. Defendants also retained Todd D. Sekundiak, M.D., to assess plaintiff's claim that the Device was defective or had any role in the symptoms alleged by plaintiff. Dkt. # 30-3, at 19-27. Dr. Sekundiak found no evidence that the Device malfunctioned or was defectively designed, and he noted that plaintiff's complaints of hip pain were not uncommon, even after a successful hip replacement. Id. at 25-26.

Defendants filed a motion for summary judgment (Dkt. # 30) and plaintiff did not respond within 21 days. Instead, plaintiff filed a motion to dismiss her claims without prejudice to refiling, because she had been unable to find an attorney willing to take her case. Dkt. # 43. The Court denied plaintiff's motion for voluntary dismissal, but the Court extended plaintiff's time to respond to defendant's motion for summary judgment. Dkt. # 47. Plaintiff filed a response stating that she had medical records, pictures, and billing statements to support her claim, but she did not attach any of this evidence to her response. See Dkt. # 48, at 2.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

## III.

Defendants seek summary judgment on plaintiff's claims, because all of plaintiff's claims are barred by the statute of limitations and plaintiff has not produced any evidence in support of her claims. Plaintiff filed a response stating that she has evidence, but she does not address defendant's statute of limitations argument or provide any evidence in support of her claims. Consistent with Supreme Court and Tenth Circuit precedent, the Court will construe plaintiff's <u>pro</u> <u>se</u> pleadings liberally when ruling on defendants' motion for summary judgment. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>Gaines v. Stenseng</u>, 292 F.3d 1222, 1224 (10th Cir. 2002). "Although '[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers,' . . . 'pro se parties [must] follow the same rules of procedure that govern other litigants.'" <u>Garrett v. Selby Connor Maddux & Janer</u>, 425 F.3d 836, 840 (10th Cir. 2005) (quoting <u>Nielsen v. Price</u>, 17 F.3d 1276, 1277 (10th Cir. 1994)).

Under Oklahoma's statute of limitations, a plaintiff has two years to file a negligence claim after the claim has accrued. OKLA. STAT. tit. 12, § 95. Oklahoma courts apply the discovery rule and, under the discovery rule, the statute of limitations for a negligence action begins to run when the plaintiff is or should be aware that the defendant's conduct caused an injury to plaintiff. <u>Marshall v. Fenton, Fenton, Smith, Reneau & Moon, P.C.</u>, 899 P.2d 621, 624 (Okla. 1995). Manufacturer's products liability claims are also subject to a two year statute of limitations. <u>O'Neal v. Black & Decker Mfg. Co.</u>, 523 P.2d 614, 615 (Okla. 1974); <u>Kirkland v. General Motors Corp.</u>, 521 P.2d 1353, 1361-62 (1974). The discovery rule also applies to manufacturer's products liability claims, and the statute of limitations for a manufacturer's products liability claim begins to run when the plaintiff knew or should have known of an injury and that the defendant's actions caused the

6

injury. <u>Daugherty v. Farmers Co-op. Ass'n</u>, 689 P.2d 947, 950-51 (Okla. 1984). Breach of warranty claims are viable in the context of manufacturer's products liability only to the extent that a breach of warranty claim may be pursued under the Uniform Commercial Code, and the statute of limitations for such a claim is five years. OKLA. STAT. tit. 12A, § 2-275; <u>Daugherty</u>, 689 P.2d at 951. The statute of limitations for breach of warranty accrues upon "delivery" of the goods. <u>Masquat v. DaimlerChrysler Corp.</u>, 195 P.3d 48, 53 n.2 (Okla. 2008).

In this case, plaintiff's second hip replacement surgery occurred on October 2, 2002 and the Device was installed during this procedure. Plaintiff claims that she knew shortly after this surgery that the Device was defective and, at most, she came to believe that the Device caused her injuries within one year of the surgery. Construing the evidence in favor of plaintiff, the Court will assume that the statute of limitations for plaintiff's negligence and manufacturer's products liability claims began to accrue one year after her October 2, 2002 hip replacement surgery, or on October 2, 2003. Plaintiff's statute of limitations to file negligence or manufacturer's products liability claim expired on October 2, 2005 at the latest. However, plaintiff did not file this case until July 19, 2010, almost five years after the statute of limitations to file negligence or manufacturer's products liability claims expired. Plaintiff's breach of warranty claim is also barred by the statute of limitations, because this claim was not filed before October 2, 2007, or within five years of "delivery" of the Device. Thus, all of plaintiff's claims are barred by the statute of limitations.

Defendants also argue that plaintiff has not met her burden to come forward with evidence supporting each essential element of her claims, and summary judgment in favor of defendants is appropriate under Rule 56. In particular, plaintiff is claiming that a complex medical device was defective and she has not identified an expert who will testify in support of her claims. Expert

testimony is essential in cases "[w]here injuries are of a character requiring skilled and professional men to determine the cause and extent thereof." Alexander v. Smith & Nephew, P.L.C., 98 F. Supp. 2d 1276, 1284 (N.D. Okla. 2000) (quoting Williams v. Safeway Stores, Inc., 515 P.2d 223, 227 (Okla. 1973)). Plaintiff alleges that the Device, not any underlying injury or degenerative condition, caused her to suffer pain and long term injury, and this is the type of claim that must be supported by expert testimony. Plaintiff has also wholly failed to meet her burden under Rule 56(c) to come forward with any type of evidence supporting her claims, and defendants are entitled to summary judgment.

**IT IS THEREFORE ORDERED** that Zimmer's Motion for Summary Judgment (Dkt. # 30) is granted. A separate judgment is entered herewith.

**DATED** this 22nd day of June, 2011.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT